826 F.2d 974
 Alfred A. FORZLEY, Plaintiff-Appellee,
v.
AVCO CORPORATION ELECTRONICS DIVISION, a Delaware Corp.,
Defendant-Appellant.
Alfred A. FORZLEY, Plaintiff-Appellee, Cross-Appellant,
v.
AVCO CORPORATION ELECTRONICS DIVISION, a Delaware Corp.,
Defendant-Appellant, Cross-Appellee.
 Nos. 85-5942, 85-6053.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 8, 1987.
 
 Ramon Martinez, Jr., Naphin, Banta & Cox, Chicago, Ill., and Jeffrey B. Lathe, Blackwell, Walker, Fascell & Hoehl, Miami, Fla., for AVCO Corp. Electronics Div.
 E. Hugh Chappell, Jr. and Richard A. Beauchamp, Chappell & Brandt, P.A., Ft. Lauderdale, Fla., for Alfred A. Forzley.
 Appeals from the United States District Court for the Southern District of Florida.
 Before VANCE and ANDERSON, Circuit Judges, and WISDOM*, Senior Circuit Judge.
 WISDOM, Senior Circuit Judge:
 
 
 1
 AVCO Corporation, Electronic Division, defendant/appellee, employed Alfred A. Forzley, plaintiff/appellant, under a two-year agreement, to work on a construction project in Saudi Arabia. Forzley's appeal raises three dispositive issues. 1) Does the termination of the employment agreement before its expiration because of Forzley's absence from work for more than ninety consecutive days for medical reasons constitute a breach of that agreement? 2) Is Forzley's claim for retroactive overtime pay barred by the applicable statute of limitations? 3) Is Forzley entitled to a service award upon termination of the agreement before the expiration of its two year term under either Exhibit "A" of the agreement or Article 87 of the Saudi Arabia Workmen and Labor Law? After oral argument on cross-motions for summary judgment, the district court held that AVCO wrongfully terminated the employment agreement and, after a trial to the bench on the issue of damages, rendered final judgment against AVCO in the amount of $80,427.04 plus interest. This figure included sums for a service award under Exhibit "A" of the agreement as well as an award for retroactive overtime pay. The court denied Forzley's request for attorney's fees.
 
 
 2
 We reverse the judgment of the district court except as to the denial of Forzley's request for attorney's fees, and hold that AVCO did not breach the employment agreement. We also hold that Forzley is entitled to both service awards, and remand for calculation of the amount of service award he is entitled to receive under the Saudi Arabia Workmen and Labor Law, and for a recalculation of the amount of service award to which he is entitled under Exhibit "A" of the agreement. As is explained below, any service award due under Exhibit "A" shall be reduced by the amount due under Article 87 of the Saudi Arabia Workmen and Labor Law.
 
 I.
 
 3
 On November 10, 1982, Alfred A. Forzley entered into a two year employment agreement with AVCO Corporation. The agreement required Forzley to render his full-time services to AVCO as a "field site engineer" within The Kingdom of Saudi Arabia.[1] In exchange for full time services rendered, Forzley was to receive a monthly base salary of $3,201.12 or $38,413.44 a year.
 
 
 4
 The agreement provides for various employee benefits including sick leave, which is to be computed in accordance with the Saudi Arabia Labor and Workmen Law ("The Saudi Labor Law" or "the Labor Law").[2] Exhibit "A" of the agreement, "EMPLOYEE FRINGE BENEFITS ", provides that a service award equal to fifteen percent (15%) of the employee's annual base salary shall be paid upon the satisfactory completion of the first year of employment, and twenty percent (20%) of the employee's annual base salary upon satisfactory completion of the second year. If the employment agreement is terminated "without cause", the service award is to be pro-rated to the date of termination. If the employment agreement is terminated "with cause", the employee is not entitled to any portion of the service award.
 
 
 5
 Paragraph 9 of the agreement, "TERMINATION ", permits termination at any time "without cause" or "with cause" as defined in paragraphs 9(A)(1) and 9(B)(2), respectively. Neither of these paragraphs explicitly provide for termination of the agreement in the event Forzley should become ill for an extended period. The Saudi Labor Law, incorporated into the agreement under paragraph 19, does contain an explicit provision for this circumstance.
 
 
 6
 Paragraph 19, "APPLICABLE LAW ", provides that the agreement and all of its terms shall be governed by and construed in accordance with the Saudi Labor Law, and that, in the event a conflict should arise between the terms of the agreement and the Labor Law, the Labor Law shall supersede those contractual terms. Article 82 of the Labor Law provides, among other things, that the employment agreement "shall ... come to an end upon ... [the employee's] illness resulting in his absence from work for a period of not less than ninety consecutive days". Article 82 of the Labor Law requires the employer to pay the employee the full service award computed in accordance with Article 87 when the employee is terminated for medical reasons. See Kingdom of Saudi Arabia, Ministry of Labour and Social Affairs, Labour Affairs Agency, Labor and Workmen Law and Attached Procedures 30; 32-33 (Jeddah 1969). Article 151 of the Saudi Labor Law provides that overtime pay shall be paid at the rate of 150 percent of the employee's usual wage.[3] Id. at 50.
 
 
 7
 The essential facts are not in dispute. Forzley arrived in Saudi Arabia about November 10, 1982, after completing several weeks of training with pay at AVCO headquarters in Huntsville, Alabama. In the first week of January 1983, Forzley began inspecting and testing cables and conduits connecting a master computer control system to various remote multiflex terminals. The cables and conduits were miles long and were stretched across land in walled off sections underground so that, after inspecting one segment of the cable, Forzley would have to climb out and go on to the next manhole, climb down into that manhole, and inspect the next segment of cable and so on until all of the cable was inspected. Forzley had access to the cables and conduits only by his lifting, with the assistance of a four-foot hook, manhole covers weighing between 300 to 1,000 pounds. After lifting a cover, Forzley and a co-worker would then lower a ladder and he would descend. During the first week of lifting these manhole covers, Forzley felt pain in his right side. Although he suspected that he had developed yet another hernia,[4] Forzley did not seek medical attention, nor did he fill out an accident report documenting the occurrence of his suspected injury.
 
 
 8
 On February 11, 1983, one day after completing his three month probationary period,[5] ] Forzley left Saudi Arabia on a three day company-approved leave to Cairo, Egypt. He started to have pains shortly after he arrived in Cairo. He then immediately purchased a ticket to return home to the United States on a flight departing Egypt the next day. Forzley did not notify AVCO of his intention to leave Egypt.
 
 
 9
 Forzley arrived at his home in Florida late in the evening of February 13, 1983. That day or the next, he telephoned AVCO representatives in Huntsville, Alabama, to report what had happened and to say that he would get back in touch with them after seeing his physician.
 
 
 10
 On February 17, 1983, Forzley was examined by his personal physician, Dr. Motta. Dr. Motta confirmed Forzley's suspicion; he had another hernia requiring surgical repair. On February 24, 1983, Dr. Motta certified that Forzley had been under his care for a recurrent right inguinal hernia. On April 11, 1983, Dr. Motta certified that Forzley's hernia condition required surgery. AVCO granted Forzley medical leave on March 23, 1983, effective February 17, 1983.
 
 
 11
 Forzley did not undergo surgery until June 23, 1983. He postponed surgery until first receiving authorization for its payment from AVCO's worker's compensation insurer. According to AVCO, its worker's compensation insurer delayed authorizing payment because of Forzley's initial failure to report the injury in Saudi Arabia in accordance with AVCO policy. Thus, the compensation insurer had no documentation of an on-the-job injury that would be compensable. Forzley had other medical insurance; it is unclear, therefore, why he postponed the surgery until the compensation insurer authorized payment. In any case, AVCO paid Forzley his full salary for the first thirty days of his medical leave, and three-quarters of his full salary for the next sixty days of medical leave, in accordance with Article 158 of the Saudi Labor Law. Avco's compensation insurer eventually paid for Forzley's surgery and hernia-related medical costs.
 
 
 12
 In a note dated July 28, 1983, Dr. Moreno, Dr. Motta's associate, certified that Forzley could return to work subject to a restriction on heavy lifting. On July 29, 1983, Forzley wrote AVCO requesting a written statement as to his employment status and attached Dr. Moreno's certification to his letter. On September 3, 1983, AVCO informed Forzley that it terminated the employment agreement, effective that day. The stated reason for the termination was AVCO's determination that, based upon Dr. Moreno's statement and Forzley's "past and current history", Forzley would be unable to perform the duties assigned to him in Saudi Arabia.[6]
 
 II.
 
 13
 Forzley filed this diversity action in Florida, the state of his domicile. In a diversity case, of course, a federal court must apply the conflict of laws doctrine of the state in which it sits. Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Florida law, "[W]hen the parties to a contract have indicated their intention as to the law which is to govern, it will be governed in accordance with the intent of the parties". Department of Motor Vehicles v. Mercedes-Benz of North America, Inc., 408 So.2d 627, 629 (Fla.Dist.Ct.App.1981) (citing Hirsch v. Hirsch, 309 So.2d 47 (Fla.Dist.Ct.App.1975)); see also Lafayette Stabilizer Repair Inc. v. Machinery Wholesalers Corporation, 750 F.2d 1290, 1294 (5th Cir.1985). "The language used in the contract is the best evidence of the intent of the parties at the time they entered into the contract". Department of Motor Vehicles, id. (citing Boat Town U.S.A., Inc. v. Mercury Marine Division, 364 So.2d 15 (Fla.Dist.Ct.App.1978)). The law chosen in the contract itself will be applied so long as there is a reasonable relationship between the contract and the state whose law is selected and the selected law does not conflict with Florida law or confer an advantage on a non-resident party which a Florida resident does not have. Department of Motor Vehicles, id. at 629-30. Florida does not distinguish between contractual selection of the law of a foreign country and contractual selection of the law of another state. See Manrique v. Fabbri, 474 So.2d 844, 845 (Fla.Dist.Ct.App.1985).
 
 
 14
 In this case, the parties have agreed that their agreement and all of its articles "shall be governed by and construed in accordance with" the Saudi Labor Law and that, should any of the contractual articles conflict with that law, "the Labor Laws [of Saudi Arabia] shall supersede and take precedence over any such articles".[7] The choice of Saudi Labor Law is reasonable because the contract is to be performed in Saudi Arabia. Moreover, Forzley does not allege that the Labor Law, or any particular article of the Labor Law, conflicts with any law of the forum.
 
 III.
 
 15
 Article 82 of the Saudi Labor Law provides:
 
 
 16
 The labor contract shall ... come to an end upon the death of the workman, his total disability to perform his work as established by a medical certificate, or his illness resulting in his absence from work for a period of not less than 90 consecutive days....
 
 
 17
 Such disability or illness shall be established by a medical certificate issued by a competent physician ...
 
 
 18
 The employer must refrain from terminating the contract during the [90 day] period of illness and shall ... pay the workman the full termination award in accordance with the provisions of this law.
 
 
 19
 (emphasis added). This article has been interpreted to mean that the employment contract terminates by operation of law upon the employee's total disability or upon an illness lasting more than 90 consecutive days unless the parties have agreed otherwise. See A. Lerrick, Q. Javed Mian, Saudi Business and Labor Law and its Interpretation and Application 43 (1982). Cf. Restatement (Second) of Agency Sec. 409(1) (1958) ("A principal is privileged to discharge before the time fixed by the contract of employment an agent who ... fails to perform or reasonably appears to be unable to perform a material part of the promised service, because of physical or mental disability.") The only prohibition in Article 82 is that an employment agreement cannot be terminated during the first ninety days of an employee's illness.
 
 
 20
 Forzley was granted a period of sick leave effective February 17, 1983, after his physician certified to his having a hernia and his inability to travel. He underwent surgery on June 23, 1983, and was not released by his physician for return to work until July 28, 1983. The release was subject to a restriction on lifting. Thus, Forzley was absent from work for a continuous period of more than 150 days before being given a qualified release to return to work. AVCO terminated the agreement on September 3, 1983. There is no provision in the employment agreement to the effect that, if Forzley becomes unable to work for a period in excess of 90 days, the contract will remain in effect. Accordingly, we hold that termination of the agreement was, for the reasons given and at the time done, in accordance with Article 82 of the Saudi Labor Law, and thus, AVCO did not breach the agreement.
 
 
 21
 Forzley argues that the 90 day period in Article 87 was tolled until June 23, 1983, the day he underwent surgery, because AVCO caused a delay in processing his request for payment of the proposed surgery. Because he was released for return to work within 35 days of his surgery, Forzley contends that, but for the delay, he would not have been absent from work for 90 days or more, and that Article 87 does not, therefore, provide a basis for termination of the agreement. The suggestion that AVCO caused the delay in Forzley's postponing surgery until June 23, 1983, is without support in the record. It is undisputed that Forzley did not seek medical attention or file an accident report documenting his suspected hernia at any time before leaving for the United States in February 1983, even though he first thought he sustained a hernia in early January 1983. Forzley had four previous hernias, all requiring surgical repair, and therefore was familiar with the symptoms associated with hernias. A hospital for AVCO workers was on or near the construction site. During an orientation meeting, Forzley was instructed regarding how to file accident reports. It is unclear, therefore, why Forzley did not seek medical attention or file an accident report documenting his suspected injury. Instead, Forzley chose to make arrangements to return to the United States without first informing anyone at AVCO of his planned departure, or the reasons for doing so. This was not an emergency departure; Forzley's flight did not leave for the United States until the day after his ticket was purchased. Forzley's worker's compensation claim was presented to AVCO for the first time after his return to the United States. According to AVCO, because Forzley failed to document properly his injury in Saudi Arabia, its compensation insurer needed other documentation that the hernia was sustained at work so that it would be liable for the expenses associated with Forzley's medical claim.
 
 
 22
 AVCO does state that "some of the delay" in processing Forzley's claim was caused by its having less than complete information on file in its Alabama office with respect to Saudi claims. That delay, however, is irrelevant to any tolling issue in the absence of Forzley's contention that he could not have undergone the proposed surgery without an advance guarantee for its payment by AVCO's worker's compensation insurer. Indeed, on April 7, 1983, some 100 days before his medical release to return to work, AVCO advised Forzley by letter that there was no need to delay the proposed surgery because, "one insurance or the other[8] is going to assume responsibility for the surgical bills ...". Forzley does not deny receiving this letter, nor does he contend that his group medical policy did not provide coverage for his hernia related medical expenses. Moreover, Forzley does not contend that his physician refused to operate absent advance guarantee as to which insurer would pay him. Accordingly, Forzley fails to raise a genuine issue that AVCO caused his surgery to be delayed. The 90 day period in Article 82 was not, therefore, tolled, if at all, beyond April 18, 1983.[9] More than 90 days elapsed between then and July 28, 1983, the date his physician released him for return to work.
 
 IV.
 
 23
 The judgment awarded Forzley included sums for overtime pay that accrued before the alleged wrongful termination. Although the employment agreement is silent with regard to overtime pay or the rate of compensation for work performed overtime, AVCO paid Forzley for 229 hours of overtime work performed at his usual hourly rate. Article 151 of the Saudi Labor Law, however, requires that an employee be compensated at the rate of 150 percent of his usual hourly rate for all overtime work performed. Because the overtime rate prescribed in Article 151 conflicts with the rate paid, Article 151 controls, in accordance with paragraph 19.
 
 
 24
 Forzley's right to compensation for overtime pay at the rate of 150 percent of his usual hourly pay arises exclusively under Article 151 of the Saudi Labor Law. When the cause of action arises in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in a Florida State Court. Januse v. U-Haul Co., Inc., 399 So.2d 402, 403 (Fla.Dist.Ct.App.1981) (quoting Fla.Stat. Sec. 95.10 (1975)).
 
 Article 13 of the Labor Law provides:
 
 25
 No complaint shall be heard by any Commission in respect of violations of the provisions of this [Labor] Law ... after the lapse of twelve months from the date of the occurrence of such violation. No case or claim relating to any rights provided in this [Labor] Law shall be heard after the lapse of twelve months from the date of termination of the contract.
 
 
 26
 It is unclear whether the statute of limitations on Forzley's claim for retroactive overtime pay begins to run on the last date of the occurrence of the violation, presumably February 10, 1983, at the latest. If so, this claim clearly would be time-barred because Forzley last worked in Saudi Arabia on February 10, 1983, and his original complaint was filed more than one year from that date. We do not decide, however, whether the applicable statute of limitations for Forzley's claim for overtime pay is one year from the date of the alleged violation, because we conclude that, even assuming the more liberal period applies, i.e., one year from the date of termination of the contract, Forzley's claim for overtime pay is nevertheless still time-barred.
 
 
 27
 Forzley filed an amended complaint to assert a claim for overtime pay on May 15, 1985, one year and some eight months after the termination. Of course, if the amended complaint can be said to relate back to the original complaint, Forzley's amended complaint would not be time-barred under the more liberal limitations period of Article 13.
 
 
 28
 An amended claim relates back to those asserted in the original pleading if it arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Fed.R.Civ.P. 15(c). "Rule 15(c) is based on the concept that a party who is notified of the litigation concerning a given transaction or occurrence has been given all the notice that the statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment ... will relate back even though the statute of limitations has run in the interim". 3 J. Moore, Moore's Federal Practice p 15.15 at 15-147 to 149 (2d ed. 1985). "[A]n amendment which states an entirely new claim for relief based on different facts will not relate back." Id. at 15-149.
 
 
 29
 Forzley filed his claim for damages resulting from AVCO's alleged breach of contract on August 16, 1984. That claim was based solely on the ground that the agreement was terminated before the expiration of the two year term without contractual justification. That complaint put AVCO on notice that Forzley sought pay and other contractual benefits that he would have received for the remainder of the contractual term had the agreement not been terminated on September 3, 1983.
 
 
 30
 We conclude that Forzley's claim for damages, which was based solely on the alleged wrongful termination of the employment agreement before the expiration of the two-year term, did not apprise AVCO that it could expect to defend a claim for retroactive overtime pay that preceded the termination. Accordingly, we hold that the claim for retroactive overtime pay did not arise out of the transaction or occurrence of the original complaint, and is time-barred under even the more liberal limitation period in Article 13 of the Saudi Labor Law.
 
 V.
 
 31
 The employment agreement contains two service award provisions. They are: paragraph one of Exhibit "A" of the agreement ("Employee Fringe Benefits "), and, pursuant to paragraph 19, Article 87 of the Saudi Labor Law. If an Exhibit "A" service award vests, its payment is intended to include payment of the service award payable under Article 87, and to that extent, the awards are not mutually exclusive.[10]
 
 Article 87 of the Labor Law provides:
 
 32
 Where the term of a labor contract concluded for a specified period comes to an end ... the employer shall pay to the workman an award for the period of his service to be computed on the basis of half a month's pay for each of the first five years of service ... The last rate of pay shall be taken as basis for the computation of the award. For fractions of a year, the workman shall be entitled to an award which is proportionate to his service during that period.
 
 
 33
 Of course, in this case, the agreement ended before the expiration of its two year term. Article 82 nevertheless dictates that the full termination award shall be paid in the event an employee is terminated for illness or disability. Thus, where an employment agreement is terminated by the employee's illness, Article 82 requires payment of a service award even where the specified contractual term has not expired at the time of the termination. Clearly then, Forzley is entitled to a service award in an amount to be computed in accordance with Article 87.
 
 
 34
 Paragraph one of Exhibit "A" of the agreement provides:
 
 1) Service Award
 
 35
 Upon the satisfactory completion of a one (1) year agreement, the company shall pay the employee an amount equal to fifteen percent (15%) of the employee's base salary, which amount includes the amount of service award required under [Article 87 of the] Saudi Arabian Labor and Workman Law ...
 
 
 36
 In the event the employee is terminated without cause, the service award shall be prorated to the date of such termination.
 
 
 37
 AVCO contends that Forzley failed to show entitlement to an Exhibit "A" service award, that is, presumably, Forzley failed to show that his performance in Saudi Arabia before being placed on sick leave was "satisfactory" and therefore, the district court was erroneous in awarding one. We disagree. Forzley asserted that the employment agreement provided for payment of a service award, and presented a figure representing his calculation of the amount of that award due him. AVCO does not contend that, before being placed on sick leave, Forzley's performance was less than satisfactory, nor does our review of the record disclose any evidence that Forzley's performance was unsatisfactory.
 
 
 38
 We turn now to the question whether termination because of illness is a "without cause" termination for purposes of entitlement to an Exhibit "A" service award. The phrase "without cause" as used in Exhibit "A" is not defined with reference to any particular contractual definition. Exhibit "A", however, purports to include the Article 87 service award in payment of the Exhibit "A" service award, and, Article 82 of the Saudi Labor Law does not treat termination for illness as a bar to recovering the Article 87 service award. For this reason, we conclude that, at least for purposes of obtaining an Exhibit "A" service award, Forzley's termination was "without cause".
 
 VI.
 
 39
 We have considered all of the remaining issues raised by the parties and conclude that they are without merit or are mooted by our holding that AVCO did not breach the employment agreement. For the reasons stated, we REVERSE the judgment of the district court, except as to the denial of Forzley's request for attorney's fees, and order summary judgment in favor of AVCO on the breach of contract claim. We also REMAND for the district court to recalculate the Service Awards to which Forzley is entitled, in a manner consistent with this opinion.
 
 
 
 *
 Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Forzley's title, "field site engineer", is a misnomer; it is not descriptive of his position. Forzley is a computer technician, not an engineer. The AVCO job description lists the responsibilities corresponding to this title as including the repair and maintenance of small business equipment and computer related peripherals; the installation and deinstallation of equipment; and the performance of "other related duties as assigned". In addition to requiring Forzley to render his full time services as a "field site engineer", the agreement alternatively provides that he render his full time services in "such other capacity which the company deems appropriate and is within the employee's capabilities". Finally, the agreement provides that the employee's duties "may include the training of Saudi Arabian personnel". AVCO was in Saudi Arabia to install computer systems in the King Khalid International Airport in Riyadh, Saudi Arabia
 
 
 [2]
 Article 158 of the Saudi Labor Law provides:
 An employer who employs twenty workmen or more shall, in case a workman's illness is confirmed by a medical certificate issued by a competent physician ... grant the workman sick leave with full pay for the first thirty days and with three-quarter pay for the next 60 days in any one year.
 
 
 [3]
 Article 151 provides:
 The employer shall pay the workman for additional work hours an additional wage equivalent to the workman's normal wage plus fifty percent (50%). Where the work is performed on the weekly day of rest or on feast days or official holidays, the employer shall pay the workmen additional wages for the regular or additional work hours.
 
 
 [4]
 Forzley's four previous hernias required surgery. AVCO was unaware of Forzley's history of recurrent hernias because this information was omitted from Forzley's pre-employment medical examination form
 
 
 [5]
 Paragraph 4 of the agreement, "PROBATIONARY PERIOD ", provides:
 A. ... it is agreed and understood that the initial three month period, beginning from the Employee's arrival at [the] assigned site in Saudi Arabia, shall be [the] probationary period. During, or at the end of, such period the company has the right to terminate [the] employee's services if not being performed to the satisfaction of the Company.
 
 
 [6]
 Presumably, the reference to Forzley's "past and current history" is a reference to his history of recurrent hernias, which became known to AVCO sometime after it placed Forzley on medical leave
 
 
 [7]
 Paragraph 19 of the employment agreement, "APPLICABLE LAW ", provides:
 This agreement and all Articles contained herein shall be governed by and construed in accordance with the Saudi Arabian Labor and Workmen Laws and all amendments, decrees, and resolutions pertaining thereto, and should any articles contained herein conflict with said Labor Laws, the Labor Laws shall supersede and take precedence over any such articles.
 During oral argument, Forzley's attorney asserted that Saudi labor law should not apply, because AVCO did not properly prove Saudi labor law. Foreign law, however, need not be "proved" in an evidentiary sense. Rule 44.1 of the Federal Rules of Civil Procedure provides, in pertinent part: "A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source ... whether or not submitted by a party or admissible under the Federal Rules of Evidence." (emphasis added). See also 9 C. Wright, A. Miller, Federal Practice and Procedure Secs. 2443-2446 (1971). AVCO gave sufficient notice of its intent to rely on Saudi labor law in its pleadings, and supplied Forzley with a copy of the English translation of that law. Forzley is literally correct in stating that the submitted translation is not an official one. There is, however, no "official translation"; only the Arabic text is official. Forzley does not contend that there is any error in the translation. Absent any specific objection to the accuracy of the translation, we assume that the translation is an accurate one.
 
 
 [8]
 Forzley had group medical coverage through his employment at AVCO. Paragraphs "H" and "I" of the Group Insurance Benefit Statement indicate that hospital expenses for nonoccupational injury or illness and the reasonable and customary fees charged by the surgeon and anesthesiologist will be paid in full. Forzley does not argue that his recurrent right inguinal hernia would be considered a nonoccupational injury or illness under this policy that would not be covered
 
 
 [9]
 Forzley does not state when he received this letter. Even assuming that a letter mailed from Huntsville, Alabama, on April 7 or 8, 1983, took ten days to arrive at Forzley's home in North Miami Beach, Florida, more than 90 days would have elapsed between its arrival date and July 28, 1983, the date he was released for return to work
 
 
 [10]
 We do not decide the validity under the Saudi Labor Law of the provision that payment of an Exhibit "A" service award includes payment of the Article 87 service award where the Exhibit "A" service award is paid in advance of termination. See A. Lerrick, Q. Javed Mian Saudi Business and Labor Law, at 44-45. In this case, neither award has been paid