SLEET, Judge.
Philip Morris USA, Inc., and R.J. Reynolds Tobacco Company (collectively the “Tobacco Companies”) challenge a final judgment entered after jury trial in favor of Theodore Hallgren, as personal representative of the estate of Claire Hallgren. The final judgment upheld the jury’s award of approximately $1 million in compensatory damages, after factoring in Mrs. Hallgren’s comparative fault, and $1.5 million in punitive damages on claims based on Mrs. Hallgren’s smoking-related death. We affirm.
Mrs. Hallgren died from lung cancer on November 26, 1995, following her sixty-year use of tobacco products manufactured *352 by the Tobacco Companies. Mr. Hall-gren’s second amended complaint, filed under Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006),[1] asserted four claims against the Tobacco Companies, including: (1) strict liability, (2) fraudulent concealment, (3) conspiracy to commit fraudulent concealment, and (4) negligence. Mr. Hallgren also sought punitive damages on all four claims.
In January 2012, the action proceeded to trial in two phases. In Phase I, the jury found that Mrs. Hallgren was a member of the Engle class[2] and found in favor of Mr. Hallgren on all counts, apportioning fault as follows: fifty percent to Mrs. Hallgren, twenty-five percent to Philip Morris, and twenty-five percent to R.J. Reynolds. The court reduced the compensatory damages award to about $1 million based on Mrs. Hallgren’s comparative fault. During Phase I, the jury also found that Mr. Hallgren was entitled to punitive damages against each defendant. In Phase II, the jury awarded Mr. Hallgren $750,000 in punitive damages against both Philip Morris and R.J. Reynolds. This appeal ensued.
On appeal, the Tobacco Companies argue for reversal on several grounds, contending that the trial court erred by (1) granting Mr. Hallgren’s motion for summary judgment on the Tobacco Companies’ statute of limitations defense, (2) denying the Tobacco Companies’ motions for judgment notwithstanding the verdict and for new trial on Mr. Hallgren’s fraudulent-concealment and conspiracy claims, (3) failing to instruct the jury on a mitigating factor of compensatory damages, (4) permitting an award of punitive damages for Mr. Hallgren’s claims for negligence and strict liability, and (5) granting broad res judicata effect to the Engle Phase I findings. We affirm on all issues.
We write, however, to address the Tobacco Companies’ argument that the trial court erred in permitting an award of punitive damages on Mr. Hallgren’s claims for negligence and strict liability and to certify conflict with the First District’s decision in Soffer v. R.J. Reynolds Tobacco Co., 106 So.3d 456 (Fla. 1st DCA 2012), and the Fourth District’s decision in R.J. Reynolds Tobacco Co. v. Ciccone, 123 So.3d 604 (Fla. 4th DCA Aug. 14, 2013). For the reasons that follow, we find that Mr. Hallgren was entitled to claim punitive damages for his negligence and strict liability claims as well as for his intentional tort claims. Accordingly, we certify conflict with Soffer and identify a question of great public importance.
DISCUSSION
A. Preliminary Matter — Statute of Repose
We first briefly address the Tobacco Companies’ second argument that *353 the trial court erred by denying their motion for judgment notwithstanding the verdict on Mr. Hallgren’s claims for fraudulent concealment and conspiracy to commit fraudulent concealment because those claims were barred by the statute of repose. We reiterate that “a statute of repose runs not from the time a cause of action accrues, but from the date of a discrete act on the part of a defendant.” Laschke v. Brown & Williamson Tobacco Corp., 766 So.2d 1076, 1078 (Fla. 2d DCA 2000) (citing Kush v. Lloyd, 616 So.2d 415, 416 (Fla.1992)). Here, Mr. Hallgren alleged fraudulent concealment and conspiracy to commit fraudulent concealment based upon the Tobacco Companies’ pervasive advertising intended to conceal the health hazards of smoking cigarettes that continued up to and through the time of Mrs. Hallgren’s death in 1995 and the successive, ongoing conspiracy advanced by the tobacco industry to conceal and omit information regarding the health effects of cigarettes and their addictive nature.
The statute of repose begins to run on a claim for fraudulent concealment based on an ongoing pattern of concealment when the last act of concealment on which the plaintiff relied occurs. See Laschke, 766 So.2d at 1079. As to the conspiracy claim, “the critical date for statute of repose purposes should be the date of the last act done in furtherance of the conspiracy.” Id. In this case, the record contains abundant, adequate evidence of not only the Tobacco Companies’ misleading advertising campaigns and the false controversy perpetrated by the tobacco industry that continued until the late 1990s, but also of Mrs. Hallgren’s direct reliance on that misleading advertising. Further, under the First District’s decision in R.J. Reynolds Tobacco Co. v. Martin, the element of reliance for fraudulent concealment may be inferred from evidence of the pervasive and misleading advertising campaigns perpetuated by the Tobacco Companies. See 53 So.3d 1060, 1069-70 (Fla. 1st DCA 2010) (citing Bullock v. Philip Morris USA, Inc., 159 Cal.App.4th 655, 71 Cal.Rptr.3d 775, 792 (2008); Burton v. R.J. Reynolds Tobacco Co., 208 F.Supp.2d 1187, 1203 (D.Kan.2002)). Thus, based on the evidence presented and the inference of reliance permitted under Martin, we conclude that the theories of liability for both the fraudulent-concealment and conspiracy claims are inextricably intertwined and affirmatively demonstrate that Mr. Hall-gren’s claims were not barred by the statute of repose. See Laschke, 766 So.2d at 1079; Martin, 53 So.3d at 1069-70; see also R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331, 333 (Fla. 1st DCA 2012); Frazier v. Philip Morris USA, Inc., 89 So.3d 937, 947-48 (Fla. 3d DCA 2012).
B. Punitive Damages
We now turn to the Tobacco Companies’ argument that Mr. Hallgren was precluded from seeking punitive damages on his non-intentional claims of negligence and strict liability. Mr. Hallgren initiated this action pursuant to the Florida Supreme Court’s decision in Engle. Therefore, the Tobacco Companies contend that if Mr. Hallgren is to take advantage of the res judicata effect of the Engle Phase I findings then he is proscribed from seeking punitive damages on his negligence and strict liability claims because the Engle plaintiffs did not seek punitive damages under those theories of liability. As such, they argue that the trial court erred in instructing the jury on punitive damages as to all claims rather than restricting an award of punitive damages to the fraud claims. We disagree.
Whether the res judicata effect of the Engle Phase I findings precludes an Engle progeny plaintiff from, asserting pu *354 nitive damages for strict liability and negligence is a question of law that is reviewed de novo. See Engle, 945 So.2d at 1274; see also Philip Morris USA, Inc. v. Douglas, 110 So.3d 419, 427 n. 6 (Fla.2013).
In Soffer, the First District tackled this very issue, i.e., whether an Engle progeny plaintiff “is entitled to seek punitive damages as additional relief for [his or] her negligence and strict liability counts.”[3] 106 So.3d at 457. Mrs. Soffer, like Mr. Hallgren, asserted causes of action identical to those asserted by the Engle class: negligence, strict liability, fraudulent concealment, and conspiracy to commit fraudulent concealment. Id. at 459. The jury found for Mrs. Soffer on her strict liability and negligence claims but rejected recovery on her intentional tort claims. The trial court denied Mrs. Soffer’s request to instruct the jury on punitive damages as to the negligence and strict liability claims, finding that recovery of punitive damages was barred by the statutes of limitations for strict liability and negligence claims because the lead plaintiffs in Engle had not timely asserted claims for punitive damages under those theories.
On appeal, the First District recognized that in Engle the Florida Supreme Court “did not pass upon whether progeny plaintiffs were entitled to assert claims for punitive damages under the negligence and strict liability theories previously and specifically disallowed to members of the Engle Class as untimely.” Id. at 458-59. Nevertheless, the First District relied upon the “unique” nature of Engle to hold that progeny plaintiffs “must accept the status and procedural posture of the Engle litigation as they find it; they must accept the parameters that are framed by that litigation — including the absence of a timely claim for punitive damages under negligence and strict liability theories.” Id. at 460. The court further concluded that “tack[ing] on additional punitive damage claims [would] unjustifiably broaden the intended scope and effect of Engle and change the nature of the litigation.” Id. at 461;
We recognize and appreciate the unprecedented significance of the Engle decision, and we agree that the Engle class is benefited by the res judicata effect of the Phase I findings. Nonetheless, we cannot conclude that such benefit precludes an Engle progeny plaintiff from seeking a remedy barred as untimely by the Engle trial court for mere procedural deficiencies. Further, unlike the First District, we conclude that the unique nature of Engle necessitates a finding that progeny plaintiffs are permitted to seek punitive damages on their claims for negligence and strict liability.
First, as noted by the First District, the supreme court did not address this issue in Engle; rather, the supreme court made two holdings with regard to punitive damages, neither of which creates a bar to individual progeny plaintiffs seeking punitive damages for strict liability and negligence claims.[4] When the supreme court concluded that the punitive damages award must be reversed, it decided to de- *355 certify the class and retain the Phase I findings as to claims for negligence, strict liability, fraudulent concealment, and conspiracy to commit fraudulent concealment. Engle, 945 So.2d at 1269. The court held that “[c]lass members can choose to initiate individual damages actions and the Phase I common core findings ... will have res judicata effect in those trials.” Id. By specifically stating that the Phase I common core findings would have res judi-cata effect without declaring the same for the procedural posture of the litigation, the court indicated that the rejected findings (and the issues not passed upon) would not have the same res judicata effect as is generally the case when litigation is declared res judicata. Thus, while Mr. Hall-gren and the Tobacco Companies are clearly bound by the findings the supreme court upheld, they are not similarly bound by the findings not passed upon.
And while Mr. Hallgren benefited from the preclusive effect of the Engle Phase I findings on his substantive claims, he also proved through direct evidence that the Tobacco Companies were liable for punitive damages. We disagree with the conclusion in Soffer that, by virtue of the res judicata effect of the Engle Phase I findings, an established prohibition exists on punitive damages for negligence and strict liability theories as to all class members and that the principles of equitable tolling do not revive claims for punitive damages that were not timely presented in the first instance. See Soffer, 106 So.3d at 459. We find Judge Lewis’s dissent more persuasive because punitive damages are not an independent cause of action. Rather, punitive damages are merely a remedy that must be asserted in conjunction with a substantive claim. As noted by Judge Lewis,
Engle III does not impose a blanket requirement that Engle progeny plaintiffs must file identical claims to the original class. Rather, it suggests that in order to take advantage of the Phase I findings, progeny plaintiffs must file the same claims. Here, Mrs. Soffer was able to take advantage of the Phase I findings because she, in fact, filed the same claims as the original class (strict liability, negligence, fraud, and conspiracy to commit fraud). The only difference is the remedy. The fact that her remedy of punitive damages was more extensive than that sought by the Engle class is not necessarily fatal. First, a claim for punitive damages is “not a separate and distinct cause of action but is auxiliary to, and dependent upon, the .existence of an underlying claim.” See Liggett Group Inc. v. Engle, 853 So.2d 434, 456 (Fla. 3d DCA 2003) (‘Engle II ”), quashed in part by Engle III, 945 So.2d at 1254; see also Country Club of Miami Corp. v. McDaniel, 310 So.2d 436, 437 (Fla. 3d DCA 1975). Second; her reliance on the Phase I findings was not relevant to her claim for punitive damages, which she had to independently prove. See, e.g., Brown, 70 So.3d at 717-18 (clarifying that the plaintiff must prove legal causation and damages). Third, the supreme court retained most of the jury’s Phase I findings, except that it did not retain the finding on entitlement to punitive damages, which -it found to be premature. See Engle III, 945 So.2d at 1269. The supreme court vacated the $145 billion punitive damage award holding, in pertinent part, as follows:
Class members can choose to initiate individual damages actions and the Phase I common core findings we approved above will have res judicata effect in those trials. Id. at 1269, 1276.
Accordingly, in my view, the supreme court did not intend to give res judicata *356 effect to punitive damages claims and specifically allowed class members to initiate “individual damages actions.”
Soffer, 106 So.3d at 463 (Lewis, J., dissenting) (emphasis added).
The Tobacco Companies have failed to provide any express language or implication from Engle to support their position. Here, and in Soffer, they have resorted to citing Hromyak v. Tyco International Ltd., 942 So.2d 1022 (Fla. 4th DCA 2006), and Forzley v. AVCO Corp. Electronics Division, 826 F.2d 974 (11th Cir.1987). We find their reliance on these cases misplaced.
In Hromyak, the Fourth District affirmed the trial court’s decision holding that a stockholder’s claims were not tolled during the pendency of a class action pursuant to the doctrine of class action tolling because the stockholder’s claims were not the same as those asserted in the underlying class action. 942 So.2d at 1023. Hromyak circumscribes the claims subject to tolling that may be asserted in an individual action following decertification of a class, but it does not suggest any limitation on the remedies that can be sought. Id.; see also Soffer, 106 So.3d at 463-64 (Lewis, J., dissenting).
In Forzley, the Eleventh Circuit Court of Appeals, in a diversity case, applied Saudi Arabian law to conclude that the plaintiff was properly terminated from his employment under Saudi labor law for an extended absence and that his termination' for a work-related hernia was without cause. 826 F.2d 974. The Tobacco-Companies cited the specific portion of this case wherein the Eleventh Circuit held that the plaintiffs claim for retroactive overtime pay was barred by the applicable statute of limitations because it did not arise out of the transaction or occurrence of the original complaint and could not relate back to those claims asserted in the original pleading pursuant to Federal Rule of Civil Procedure 15(c). Id. at 981. Like Hromyak, Forzley addressed a situation in which the plaintiff sought to amend his complaint to assert an additional claim, not an additional remedy.
Unlike the plaintiffs in Hromyak and Forzley, Mr. Hallgren asserted identical claims to those asserted in Engle — negligence, strict liability, fraudulent concealment, and conspiracy to commit fraudulent concealment. The only difference is the extent of the remedy sought. Adding a claim for punitive damages does not materially alter the claims for negligence and strict liability.
Furthermore, Engle plainly contemplates the filing of wrongful death actions, and Mr. Hallgren filed his wrongful death lawsuit within the additional one-year tolling period permitted by the supreme court. See Engle, 945 So.2d at 1277. As a result, the statute of limitations was tolled on his substantive claims. The Tobacco Companies argue that permitting Mr. Hallgren to add the remedy of punitive damages to his claims for negligence and strict liability results in substantial prejudice because Mr. Hallgren benefited from the tolling of his claims during the Engle litigation. What the Tobacco Companies fail to recognize is that a claim for punitive damages is not subject to a separate time limitation apart from the substantive claim to which it is linked. Accordingly, because Mr. Hallgren’s substantive claims were timely under the En-gle mandate, so too was the addition of his remedy for punitive damages.
Moreover, the Engle class plaintiffs were only denied the opportunity to claim punitive damages for negligence and strict liability because the trial court deemed their motion to amend the complaint to assert punitive damages for negligence *357 and strict liability untimely. See Soffer, 106 So.3d at 458. Although that decision was within the sound discretion of the Engle trial court, it is not one that provides any cogent reason for barring individual progeny plaintiffs from asserting punitive damages for the non-intentional tort claims.
Soffer asserts that progeny plaintiffs are required to accept the “procedural posture of the Engle litigation as they find it.” 106 So.3d at 460. But when the Engle trial court’s judgment as to issues of punitive damages was reversed, the class members seeking punitive damages had to effectively start over in order to plead, prove, and collect punitive damages. If the supreme court had not opted to decertify the class and had instead remanded for a new trial, the class would have been free to renew its motion to amend the complaint to add the remedy of punitive damages to all of its substantive claims. See generally Fla. R. Civ. P. 1.190. Thus, we conclude that Mr. Hallgren was entitled to assert a claim for punitive damages on his claims for negligence and strict liability because, as the Soffer majority recognized, he was in the “same position [class members] would have been in had they filed a complaint identical to the Engle class-action complaint on the same date the original complaint was filed.” Soffer, 106 So.3d at 460.
Also, in this context, the unique nature of Engle cannot be ignored. In Philip Morris USA, Inc. v. Douglas, the Florida Supreme Court clarified that,
[b]y holding that the [Engle ] Phase I findings are entitled to “res judicata effect,” our decision .in Engle allowed members of the decertified class to pick up litigation of the approved six causes of action right where the class left off— i.e., with the Engle defendants’ common liability for those claims established.
110 So.3d at 432. Practically speaking, however, a progeny plaintiff is still required to file a new complaint and go through the procedural morass of initiating a new cause of action. And a progeny plaintiff must still prove the “individual aspects of the claims specific to each plaintiff,” including damages. Id. Because the decision preventing the Engle class from amending its complaint to seek punitive damages for negligence was merely procedural and was not decided on the merits, we conclude that the res judicata effect of the Phase I findings does not preclude progeny plaintiffs from seeking punitive damages- on those claims. See id. at 433 (recognizing “that a ‘purely technical,’ non-merits judgment ‘may not be used as a basis for the operation of the doctrine of res judicata’ ” (quoting Kent v. Sutker, 40 So.2d 145, 147 (Fla.1949))); McCormack v. Abbott Labs., 617 F.Supp. 1521, 1524 (D.Mass.1985) (specifically noting that following decertification of a class action, individual plaintiffs are “bound by all rulings of substantive law” (emphasis added)).
In arguing that Engle limits Mr. Hall-gren to punitive damages, for only intentional torts, the Tobacco Companies actually seek to expand the res judicata effect of Engle. See Soffer, 106 So.3d at 462 (Lewis, J., dissenting). In our view, the supreme court has neither expressly nor impliedly expanded its Engle res judicata parameters to limit Engle progeny plaintiffs’ ability to pursue the remedy of punitive damages. Because Mr. Hallgren liim ited his claims to those pleaded by the Engle class, he was free to independently prove punitive damages for all approved claims.
Last, we find no surprise or prejudice to the Tobacco Companies in allowing Engle progeny plaintiffs to seek punitive damages for negligence and strict liability claims. From the inception, it was no *358 secret that the Engle class members were seeking punitive damages as a remedy on all of their substantive claims. The Tobacco Companies had sufficient notice and ample time to prepare their defense to those remedies. In Engle, however, the trial court precluded the class from seeking punitive damages on the non-intentional tort claims merely through a procedural defect — timeliness. Unlike Engle, in this case there was no suggestion that Mr. Hallgren’s claim seeking punitive damages on all claims was untimely, nor any suggestion that the Tobacco Companies experienced any prejudice. Accordingly, the Tobacco Companies should not benefit from an unjustifiable expansion of the res judicata effect of Engle, which applies only to the substantive claims, to exclude a proper and timely pleaded remedy sought under those claims.
CONCLUSION
Under these circumstances, Mr. Hall-gren should not be limited to the pretrial procedural order on the Engle class’s proposed amendment. Once the class’s punitive damage award was reversed, and each class member was required to seek punitive damages anew, progeny plaintiffs were free to assert any remedies available under the law. .Tacking on the remedy of punitive damages to the negligence and strict liability claims does not materially alter the substantive claims, and it does not materially differ from the punitive damages sought by the Engle class on the intentional tort claims. Considered in light of the supreme court’s decision to allow Engle progeny plaintiffs to “initiate individual damages actions,” one simply cannot infer that the supreme court intended to place a limitation upon progeny plaintiffs’ ability to pursue punitive damages as a remedy. The Engle Phase I findings simply closed the door on any new or additional substantive claims and permitted each plaintiff to independently prove his or her respective damages, including punitive damages, at separate trials.
Accordingly, we affirm the trial court’s ruling that punitive damages can be awarded for negligence and strict liability claims as well as for the intentional tort claims brought under Engle, and we certify conflict with the First District’s decision in Soffer and the Fourth District’s decision in Ciccone. Additionally, we certify the following question to be of great public importance:
ARE MEMBERS OF THE ENGLE CLASS WHO PURSUE INDIVIDUAL DAMAGES ACTIONS IN ACCORDANCE WITH THE DECISION IN ENGLE V. LIGGETT GROUP, INC., 945 So.2d 1246 (Fla.2006), ENTITLED TO PURSUE PUNITIVE DAMAGES UNDER CLAIMS FOR STRICT LIABILITY AND NEGLIGENCE?
Affirmed; conflict certified; question certified.
NORTHCUTT and KELLY, JJ„ Concur.

. In Engle, the Florida Supreme Court decer-tified a class action brought against several cigarette manufacturers, including Philip Morris and R.J. Reynolds, after the action had proceeded through trial. 945 So.2d at 1269. After decertifying the class, the court provided a one-year period in which former class members could initiate individual actions against the tobacco defendants. Id. The court further provided that several factual findings common to all class members would be given res judicata effect in those individual actions. Id. These findings are commonly referred to as the Engle Phase I findings.

. The Engle class comprises "[a]ll [Florida] citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine.” R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 40 (Fla. 3d DCA 1996).

. Recently, in Ciccone, the Fourth District agreed with and adopted the analysis provided by the First District in Soffer. See 123 So.3d at 610.

. First, the court held that it was error for the jury to consider entitlement to punitive damages during Phase I of the trial because the jury’s determination of punitive damages in Phase I occurred before the jury determined liability in Phase II. Engle, 945 So.2d at 1263. Second, it found the punitive damage award to the class based on the intentional tort theories clearly excessive because it would practically bankrupt some of the defendants. Id. at 1265 n. 8.