MAKAR, J.
Lucille Soffer, the personal representative of the estate of her deceased husband, Maurice Soffer, appeals the final judgment in this Engle-progeny wrongful death action. Mrs. Soffer contests the trial court’s disallowing a claim for punitive damages on negligence and strict liability theories. R.J. Reynolds cross-appeals, seeking a new trial based on evidentiary errors as well as reversal of the trial court’s orders regarding its statute of limitations defense and the preclusive effect of the Engle class-wide jury findings. We affirm the cross-appeal, but address the question of whether Mrs. Soffer, as a member of the plaintiff class in Engle, is entitled to seek punitive damages as additional relief for her negligence and strict liability counts. We hold that she may not, but certify a question of great public importance.
I
Mrs. Soffer is termed a “progeny plaintiff,” meaning a member of the class approved in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006) (also called the En-gle Class). Those progeny plaintiffs who choose to bring actions pursuant to Engle do so, in large measure, because of the significant benefits that membership in the Engle Class confers upon them. First, progeny plaintiffs are entitled to the res judicata effect of certain factual findings made in Engle, thereby relieving them of the substantial burden, time, cost, and risk of proving the tortious-conduct elements of *458 their actions against the defendants. Second, progeny plaintiffs are entitled to a lengthy tolling of Florida’s statute of limitations, which ordinarily is two years. For example, the complaint in this case was filed on December 18, 2007, which is more than 15 years after Mr. Softer died; absent the equitable tolling that Engle provides for progeny plaintiffs, Mrs. Soffer’s action against the defendants would be time-barred by more than a decade.
The Engle Class based its theories of recovery on counts alleging negligence and strict liability as well as two intentional tort theories: fraud by concealment and conspiracy to commit fraud. The trial was tri-furcated: Phase I, during which the jury heard evidence in a year-long proceeding to resolve “issues of liability and entitlement to punitive damages for the class as a whole”; Phase II-A, which involved a determination of compensatory damages for the named plaintiffs; and, Phase II-B, which involved the determination of the amount of punitive damages for the class as a whole. Id. at 1256-57. Individualized determinations on issues of liability and compensatory damages were to take place in separate trials to separate juries for each of the class members, with punitive damages to be divided by the trial court amongst successful individual plaintiffs. Mat 1258.
In Phase I, the jury in Engle made a range of specific factual determinations supporting the four theories of recovery mentioned above. Because the trial court in Engle denied as untimely the plaintiffs’ motion to amend their complaint to seek punitive damages under negligence and strict liability theories, the jury did not address punitive damages as to these counts; instead, punitive damages for the Engle Class were limited to only the two intentional tort counts, which had been timely asserted. On these latter two counts, the jury determined that the class was entitled to punitive damages, which were set at $145 billion. Id. at 1256-57.
On appeal, the Third District reversed, decertifying the class and quashing the jury award. The supreme court, however, reversed in part and affirmed in part, holding that most of the Phase I factual findings were entitled to res judicata effect with respect to members of the Engle Class (with certain limitations). It also, in effect, equitably tolled the statute of limitations for all members of the Engle Class who brought actions “filed within one year of the mandate in this case.” Id. at 1277.
The supreme court made two holdings as to punitive damages. First, it was error for the jury to consider entitlement to punitive damages during Phase I of the trial; doing so violated principles of due process because the jury’s determination of the lump sum award of $145 billion in Phase I occurred before the jury made any determination about the ultimate liability of individual defendants in Phase II. This was legal error because there was “no way to evaluate the reasonableness of the punitive damages award without the amount of compensatory damages having been fixed.” Id. at 1262. It was also error because the jury’s punitive damages award preceded any finding that the “plaintiffs had established causation and reliance.” Id. Second, the court held that the amount of the punitive damages was excessive; thus, even if the finding of entitlement to punitive damages in Phase I had been permissible, the classwide punitive damages award was “clearly excessive” and would “result in an unlawful crippling of the defendant companies.” Id. at 1265 and n. 8. The court in Engle did not pass upon whether progeny plaintiffs were entitled to assert claims for punitive damages under the negligence and strict liability theories *459 previously and specifically disallowed to members of the Engle Class as untimely.
II
Maurice Soffer died in May of 1992 of lung cancer caused by smoking. Mrs. Soffer brought this wrongful death action against R.J. Reynolds seeking to take advantage of the Engle Class findings. She asserted causes of action identical to those asserted in Engle: negligence, strict liability, and the two intentional tort theories. As in Engle, the trial court allowed the jury to consider punitive damages on the two intentional tort counts, but disallowed them as to the negligence and strict liability counts. The trial court found the punitive damages claims, as to the negligence and strict liability causes of action, were barred by the statute of limitations; because the lead plaintiffs in Engle had not timely asserted such claims, therefore, the trial court reasoned, they are unavailable to progeny plaintiffs. The jury found for Mrs. Soffer on the strict liability and negligence counts, awarding $2,000,000 in compensatory damages; the jury rejected recovery on the intentional tort counts, thereby making it unnecessary to consider an award of punitive damages on those counts.[1]
In this appeal, Mrs. Soffer asserts that Engle does not preclude progeny plaintiffs from seeking awards of punitive damages on negligence and strict liability theories, which — as a general matter under ordinary circumstances — may be sought under Florida law. The causes of action in this case, Mrs. Soffer argues, are identical to those asserted in Engle; only the requested additional remedy — punitive damages for the non-intentional tort counts — is different. She claims she is not bound to the remedies timely sought in Engle and that principles of equitable tolling do not apply to bar her assertion of punitive damages for the negligence and strict liability theories upon which she prevailed (the jury in her case having rejected the intentional tort theories for which the Engle Class sought and initially was awarded punitive damages).
R.J. Reynolds argues, on the other hand, that progeny plaintiffs — as members of the Engle Class — may assert only those timely claims and remedies previously pursued and ultimately approved by the Florida Supreme Court in its path-breaking decision. In doing so, progeny plaintiffs receive substantial benefits and must “take the bitter with the sweet”; they cannot unilaterally accept the enormous benefits of equitable tolling and the res judicata effect of Phase I findings without accepting the limitations, express and implied, in that decision. To allow new claims for punitive damages at this late date would fundamentally alter the character of this unprecedented litigation. As members of the Engle Class, progeny plaintiffs are subject to the posture of the case as it exists, which includes the established prohibition on punitive damages for the negligence and strict liability theories as to all class members; principles of equitable tolling do not revive claims for punitive damages that were not timely presented in the first instance. We agree with each of these points.
In doing so, we do not agree with Mrs. Soffer’s assertion that punitive damages— simply because they are generally permit *460 ted for negligence and strict liability — are merely an additional remedy that members of the Engle Class may pursue. While we have no dispute with the general proposition that plaintiffs who assert negligence and strict liability counts normally are permitted to plead and perhaps prove entitlement to punitive damages under applicable standards, this point only takes us so far. It does not thereby follow that progeny plaintiffs as members of the En-gle Class, who are part of one of the most uniquely structured and extraordinarily adjudicated cases in the state’s history, are thereby entitled to the benefits that might occur or be available in the usual course of a routine case that is litigated by an individual plaintiff from start to finish. To us, the unique context of Engle matters.
Progeny plaintiffs wear the same shoes, so to speak, as the plaintiffs in Engle because they are the plaintiffs from En-gle.[2] Progeny plaintiffs thereby must accept the status and procedural posture of the Engle litigation as they find it; they must accept the parameters that are framed by that litigation — including the absence of a timely claim for punitive damages under negligence and strict liability theories. The supreme court’s decision in Engle vacated the punitive damages award that was supported by and linked solely to the intentional tort theories of recovery; it thereby could be said to have wiped the slate clean as to punitive damages for those two counts. The decision says nothing to suggest, however, that the supreme court intended to preserve for the progeny plaintiffs anything other than the claims and remedies properly and timely asserted in that litigation.
This result is far from unfair. As members of the class, Engle progeny plaintiffs are in the same position they would have been in had they filed a complaint identical to the Engle class-action complaint on the same date the original complaint was filed. Here, Mrs. Softer is not merely seeking to take advantage of Engle via the filing of a new and independent claim; rather, she was a party to Engle and, to the extent her claims differ from those in that case, she must meet the requirements for amending her complaint, which she cannot do. There is no indication in Engle that our supreme court intended to extend its decision beyond the claims and remedies that had actually been timely asserted in the first place. Punitive damage claims under negligence and strict liability theories were untimely and not authorized as part of the Engle litigation; they were authorized only for the two intentional tort counts of fraud by concealment and conspiracy to commit fraud. If the supreme court had intended that its decision be so open-ended as to allow claims for punitive damages not otherwise made available in the course of Engle, it would have said so; it has not and we decline to expand the breadth of possible remedies or benefits available to progeny plaintiffs absent clearer direction from our supreme court.
III.
In conclusion, progeny plaintiffs, such as Mrs. Soffer, may choose to accept the preclusive benefits of the Phase I findings in Engle and the benefits of that decision’s tolling of the statute of limitations, but in doing so they are constrained to the punitive damage claims timely sought in the operative class-action com *461 plaint; they may not tack on additional punitive damage claims lest they unjustifiably broaden the intended scope and effect of Engle and change the nature of the litigation. Progeny plaintiffs may assert punitive damage claims to the same extent as allowed in Engle, as Mrs. Soffer did here; but they may not assert such claims based on strict liability and negligence theories. To do so would provide an unjustifiable and potentially unintended windfall by expanding Engle beyond its existing parameters, which is not a task for this Court in the first instance under the circumstances presented. Hoffman v. Jones, 280 So.2d 431 (Fla.1973) (noting that district courts may certify questions of great public importance where appropriate). In recognition of our role in Florida’s appellate system, we certify the following question as one of great public importance for the supreme court’s consideration:
ARE MEMBERS OF THE CLASS IN ENGLE V LIGGETT GROUP, INC., 945 So.2d 1246 (Fla.2006) ENTITLED TO PURSUE AN AWARD OF PUNITIVE DAMAGES UNDER THEORIES OF NEGLIGENCE OR STRICT LIABILITY?
AFFIRMED.
DAVIS, J., concurs.
LEWIS, J., concurs in part and dissents in part.

. In pertinent part, the jury instructions read: “Punitive damages may be awarded against R.J. Reynolds Tobacco Company based only on your findings that Reynolds is liable to Mrs. Soffer for fraudulent concealment or agreement to conceal. You may not find that punitive damages are warranted against Reynolds based upon Mrs. Soffer's claim for negligence or strict liability.”

. See Nat'l Lake Devs., Inc. v. Lake Tippecanoe Owners Assn, Inc., 417 So.2d 655 (Fla.1982) (individual members of plaintiff class may choose to opt out and not be bound by a court's judgment; members not opting out “are bound by the resulting decree” even if they are absent from the proceeding).