# Supreme Court of Florida

_____

No. SC13-139
_____

**LUCILLE RUTH SOFFER, etc.,**
Petitioner,

vs.

**R.J. REYNOLDS TOBACCO COMPANY,**
Respondent.

[March 17, 2016]

PARIENTE, J.

The issue framed by the certified question in this case is whether individual members of the Engle class are entitled to seek punitive damages under theories of negligence or strict liability in their individual lawsuits following this Court's decertification of the class action in Engle v. Liggett Group, Inc., 945 So. 2d 1246, 1254 (Fla. 2006). In Soffer v. R.J. Reynolds Tobacco Co., 106 So. 3d 456, 460-61 (Fla. 1st DCA 2012), the First District Court of Appeal, in a split decision, held that individual members of the Engle class action are bound by the procedural posture of the Engle class representatives when they pursue their individual lawsuits and thus cannot seek punitive damages on the counts for negligence or

strict liability.  Id. at 459-61.  However, because its decision rested on its interpretation of this Court's decision in Engle, the First District certified the following question of great public importance for this Court's review:

> ARE MEMBERS OF THE CLASS IN ENGLE V. LIGGETT GROUP, INC., 945 So. 2d 1246 (Fla. 2006), ENTITLED TO PURSUE AN AWARD OF PUNITIVE DAMAGES UNDER THEORIES OF NEGLIGENCE OR STRICT LIABILITY?

Id. at 461.[1]  Subsequently, in Philip Morris USA, Inc. v. Hallgren, 124 So. 3d 350, 358 (Fla. 2d DCA 2013), the Second District Court of Appeal reached the opposite conclusion, certified conflict with the First District's decision in Soffer, and also certified the same question as the First District.  The Third and Fourth District Courts of Appeal have adopted the reasoning of Soffer.  See R.J. Reynolds Tobacco Co. v. Williams, No. 3D13-2099, 39 Fla. L. Weekly D1863 (Fla. 3d DCA Sept. 3, 2014) (summarily adopting the holding in Soffer); R.J. Reynolds Tobacco Co. v. Ciccone, 123 So. 3d 604 (Fla. 4th DCA 2013) (adopting Soffer and vacating punitive damages award of $50,000).

To resolve this conflict and to answer the certified question, we hold that the individual members of the Engle class action are not prevented from seeking punitive damages on all claims properly raised in their subsequent individual actions.  We reach this decision for several reasons.

---

1. We have jurisdiction.  See art. V, §3(b)(4), Fla. Const.

First, the Engle trial court's denial of the motion to amend the class action complaint to include a demand for punitive damages on the counts for negligence and strict liability was not based on the merits of the request but instead rested on the procedural posture at the time. The procedural posture of the case changed entirely when this Court vacated the entire punitive damages award of $145 billion and the related findings on punitive damages, thus wiping the slate clean as it relates to punitive damages and requiring each individual plaintiff to prove entitlement to punitive damages in his or her individual lawsuit. See Engle, 945 So. 2d at 1254.

Second, a demand for punitive damages is "not a separate and distinct cause of action; rather it is auxiliary to, and dependent upon, the existence of an underlying claim." Liggett Grp., Inc. v. Engle, 853 So. 2d 434, 456 (Fla. 3d DCA 2003), quashed in part by Engle, 945 So. 2d at 1254. Therefore, neither the statute of limitations nor principles of equitable tolling bars a plaintiff from requesting punitive damages on all properly pled counts. In fact, a plaintiff cannot even include a demand for punitive damages in the initial complaint and is allowed to add a request for punitive damages only if the evidence establishes a right to claim punitive damages by a "reasonable showing by evidence in the record," pursuant to section 768.72(1), Florida Statutes.

Third, the legal standard for establishing entitlement to punitive damages—that is, that the plaintiff must prove by clear and convincing evidence that the conduct causing the damage was either "intentional" or "grossly negligent"—does not vary depending on the underlying legal theory. Even if negligence or strict liability constitutes the underlying cause of action, the plaintiff must prove that the defendant's conduct was "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." In re Std. Jury Instr. In Civ. Cases—Report No. 09-01, 35 So. 3d 666, 790 (Fla. 2010). The burden of proof is heightened from the general "more likely than not" standard that applies to general liability questions in a civil case to a more stringent "clear and convincing" standard, no matter what the theory of punitive damages. The jury is instructed that, based on the allegedly intentional misconduct or gross negligence, it must determine whether punitive damages are warranted "as punishment" against the defendant and "as a deterrent to others." Id.

Accordingly, for these reasons, we answer the certified question in the affirmative, quash the First District's decision in Soffer, and approve the well-reasoned decision of the Second District's opinion in Hallgren as to the issue of punitive damages. We further disapprove R.J. Reynolds Tobacco Co. v. Williams, No. 3D13-2099, 2014 WL 4344369 (Fla. 3d DCA Sept. 3, 2014), as well as the

- 4 -

portion of R.J. Reynolds Tobacco Co. v. Ciccone, 123 So. 3d 604 (Fla. 4th DCA 2013), which addresses this issue.[2]

## FACTS AND BACKGROUND

Maurice Soffer died in May of 1992 from lung cancer caused by smoking. After this Court issued its decision in Engle, 945 So. 2d at 1254, requiring class members to file their own individual actions within a year, Soffer's widow, Lucille Soffer, brought a wrongful death action against R.J. Reynolds Tobacco Company pursuant to that decision. Her complaint asserted four causes of action, all of which had been pled in the Engle class litigation: negligence, strict liability, fraud by concealment, and conspiracy to commit fraud.

Approximately a year prior to trial, Soffer filed a motion to amend her complaint to add a demand for punitive damages pursuant to Florida Rule of Civil Procedure 1.190(f) and section 768.72, Florida Statutes. Soffer's request for the amendment was not limited to any one count. R.J. Reynolds objected based on its position that the allegations in support of the motion to amend were "conclusory assertions that defendants' conduct was grossly negligent or willful and wanton" and without "factual support." Further, R.J. Reynolds argued that "[t]o the extent

---

2. We granted review in Ciccone on a separate issue regarding a certified conflict of when a tobacco-related condition is manifested. R.J. Reynolds Tobacco Co. v. Ciccone, No. SC13-2415 (Fla. order accepting jurisdiction filed June 13, 2014).

- 5 -

that Plaintiff seeks punitive damages on a theory that defendants were grossly negligent, she has not proffered anything to show . . . such conduct or the required nexus to Plaintiff's decedent." (Emphasis omitted.) The trial court granted the motion to amend.

The case proceeded to trial, where evidence of punitive damages was introduced without any ruling from the trial court that limited the evidence of punitive damages to any specific count. During the jury charge conference, R.J. Reynolds asserted for the first time that the jury should be instructed that punitive damages could be considered only on the fraudulent concealment and conspiracy counts based on the procedural posture of the original Engle class action. Despite the fact that the trial court had permitted Soffer to amend her complaint to seek punitive damages—an amendment that was not limited to any particular count—the trial court agreed with R.J. Reynolds and instructed the jury that punitive damages could be awarded only if the jury found in favor of Soffer on the claims for fraudulent concealment or conspiracy and not under the negligence or strict liability claims.

The jury found that R.J. Reynolds was liable based on the strict liability and negligence claims, awarding $5,000,000 in compensatory damages, reduced by 60% comparative negligence. The jury, however, rejected the claim that R.J. Reynolds' fraudulent concealment or conspiracy was a legal cause of Soffer's

death and thus did not consider an award of punitive damages. The jury verdict consisted of special interrogatories as follows:

1. Was Maurice Benson Soffer addicted to cigarettes containing nicotine manufactured by R.J. Reynolds Tobacco Company, and if so, was such addiction a legal cause of his death?

YES __X____ NO _____

(If you answered "NO" to question 1, your verdict is for R.J. Reynolds Tobacco Company and you should proceed no further except to date and sign the verdict form and return it to the courtroom. If you answered "YES" to question 1, please answer Questions 2 through 5.)

2. Was R.J. Reynolds Tobacco Company's negligence a legal cause of Maurice Benson Soffer's death?

YES ___X___ NO _____

3. Were the defective and unreasonably dangerous cigarettes placed on the market by R.J. Reynolds Tobacco Company a legal cause of Maurice Benson Soffer's death?

YES ___X___ NO _____

4. Was R.J. Reynolds Tobacco Company's concealment or omission of material information about the health effects or addictive nature of smoking cigarettes or both a legal cause of Maurice Benson Soffer's death?

YES _____ NO ___X___

5. Was R.J. Reynolds Tobacco Company's agreement with others to conceal or omit material information about the health effects or addictive nature of smoking cigarettes or both a legal cause of Maurice Benson Soffer's death?

YES _____ NO ___X___

The jury was instructed that if it answered "NO" to questions 4 and 5, as it did, it should not consider the questions pertaining to punitive damages.

After reduction for comparative negligence, a judgment was entered for the plaintiffs for a total amount of $2,000,000. Soffer appealed, asserting that the trial court erred in instructing the jury that it was prohibited from awarding punitive damages on the counts for negligence and strict liability.[3]

The First District affirmed the trial court on this issue, noting that Soffer chose to bring her individual action pursuant to Engle based on the benefits that membership in the Engle class confers, specifically: (1) the res judicata effect of certain factual findings made in Engle, which relieved individual progeny plaintiffs of the substantial burden, time, cost, and risk of proving the tortious-conduct elements of their actions against the defendants; and (2) a lengthy tolling of Florida's statute of limitations, which ordinarily is two years. Soffer, 106 So. 3d at 457-58. Thus, the First District held, "[p]rogeny plaintiffs wear the same shoes, so to speak, as the plaintiffs in Engle because they are the plaintiffs from Engle." Id. at 460 (emphasis omitted). In reaching this conclusion, the First District relied on this Court's decision in Engle, noting that the opinion did not suggest that progeny

---

3. R.J. Reynolds did not cross-appeal the compensatory damages award.

- 8 -

plaintiffs could bring other claims and remedies that had not been timely asserted as part of the Engle litigation.  Id.

Judge Lewis dissented from the First District's holding in Soffer, reasoning that res judicata did not bar a plaintiff from seeking punitive damages on all properly pled counts because this Court's Engle decision never required Engle progeny plaintiffs to file identical claims.  In concluding that an Engle progeny plaintiff should be able to seek different remedies, Judge Lewis relied on three reasons: (1) a claim for punitive damages is "not a separate and distinct cause of action but is auxiliary to, and dependent upon, the existence of an underlying claim"; (2) the plaintiff's "reliance on the [Engle] Phase I findings was not relevant to her claim for punitive damages, which she had to independently prove"; and (3) this Court "retained most of the jury's Phase I findings," with the exception of the findings on punitive damages.  Id. at 463 (Lewis, J., concurring in part and dissenting in part).  Judge Lewis asserted that in his view, based on this error, Soffer should be entitled to a new trial, limited solely to the issue of punitive damages.  Id. at 464.

The Second District, in Hallgren, agreed with Judge Lewis's concurring-in-part and dissenting-in-part opinion.  Hallgren, 124 So. 3d at 355.  In that case, Claire Hallgren died from lung cancer on November 26, 1995, following her sixty-year use of tobacco products manufactured by Philip Morris and R.J. Reynolds.  Id.

at 351-52. Theodore Hallgren, as personal representative of her estate, filed a complaint based on Engle, asserting four causes of action: (1) strict liability; (2) fraudulent concealment; (3) conspiracy to commit fraudulent concealment; and (4) negligence. Id. at 355. Hallgren also sought punitive damages on all four counts, which the trial court permitted. Id. The trial was bifurcated into two phases. In Phase I, the jury determined that Hallgren was a member of the Engle class and found in favor of Hallgren on all counts, apportioning fifty percent of fault to Mrs. Hallgren, twenty-five percent to Philip Morris, and twenty-five percent to R.J. Reynolds. Id. In addition, the jury determined the amount of compensatory damages, which the trial court reduced to approximately $1,000,000 based on comparative fault, and found that Hallgren was entitled to punitive damages against each defendant. Id. In Phase II, the jury awarded Hallgren "$750,000 in punitive damages against both Philip Morris and R.J. Reynolds." Id.

The tobacco companies appealed, asserting that Hallgren was precluded from seeking punitive damages on his claims of negligence and strict liability because he initiated the action pursuant to Engle and was relying on the res judicata effect of the Engle litigation, despite the Engle class plaintiffs having not sought punitive damages under all of the same theories of liability. Id. at 353. The Second District disagreed that an Engle progeny plaintiff is precluded from seeking

- 10 -

punitive damages for strict liability and negligence as a result of the procedural posture of Engle. Id.

While the Second District acknowledged that members of the Engle class benefit by the res judicata effect of the Phase I findings, the district court rejected the notion that "such benefit precludes an Engle progeny plaintiff from seeking a remedy barred as untimely by the Engle trial court for mere procedural deficiencies." Id. at 354. In fact, the Second District held that "the unique nature of Engle necessitates a finding that progeny plaintiffs are permitted to seek punitive damages on their claims for negligence and strict liability." Id. In reaching this conclusion, the Second District relied on this Court's opinion in Engle and concluded that the decision "neither expressly nor impliedly expanded its Engle res judicata parameters to limit Engle progeny plaintiffs' ability to pursue the remedy of punitive damages." Id. at 357. The Second District recognized that the First District reached an opposite conclusion in Soffer and certified conflict. Hallgren, 124 So. 3d at 358.

**ANALYSIS**

The certified question asks this Court whether Engle progeny plaintiffs may pursue an award of punitive damages under theories of negligence or strict liability, or whether they are limited to seeking punitive damages only as to the intentional tort counts of fraudulent concealment and conspiracy that were

- 11 -

permitted in the original Engle class action.  In analyzing this question, we begin by reviewing Engle, including whether progeny plaintiffs who are part of the Engle class are bound by the procedural posture of punitive damages in the Engle class action and whether they "stand in the shoes" of the class representatives for all purposes.  We conclude that the individual progeny plaintiffs are not bound by the prior procedural posture of Engle when pleading punitive damages because the findings regarding liability for punitive damages were vacated.

We then proceed to address the additional argument raised by R.J. Reynolds: whether the Engle progeny plaintiffs are precluded from pursuing punitive damages on all counts because the Engle class representatives did not cross-appeal the denial of their motion to amend.  We also explain why a claim for punitive damages is not a separate cause of action that is subject to a separate statute of limitations.  Finally, we address whether R.J. Reynolds would be prejudiced in this case by allowing Soffer to seek punitive damages on her causes of action for negligence and strict liability.  We conclude that there is no legal or principled basis for denying Engle progeny plaintiffs the right to pursue punitive damages on all properly pled counts.

## I.  The Engle Class Proceedings: Res Judicata & Procedural Posture

The original Engle class action complaint was filed in May 1994.  Shortly thereafter, an amended complaint was filed, raising eight counts: (1) strict liability;

(2) fraud; (3) conspiracy to commit fraud; (4) breach of implied warranty; (5) intentional infliction of emotional distress; (6) negligence; (7) a request for equitable relief; and (8) breach of express warranty.  R.J. Reynolds Tobacco Co. v. Engle, 672 So. 2d 39, 40 (Fla. 3d DCA 1996).  The amended complaint sought punitive damages only on the intentional tort counts—fraud, conspiracy to commit fraud, and intentional infliction of emotional distress.  The trial court certified the class, and the Third District affirmed the trial court's certification order, but modified it to apply to only Florida citizens and residents.  Id. at 40, 42.

The trial was divided into three phases.  In Phase I, the jury determined whether the defendants were liable and whether the entire class was entitled to punitive damages.  Engle, 853 So. 2d at 441.  In Phase II, the jury determined the amount of compensatory damages for the named plaintiffs and the amount of punitive damages for the entire class.  Id.  In Phase III, new juries were to determine the defendants' liability to the remaining class members and, if liability was established, to determine compensatory damages.  Id. at 442.

Regarding punitive damages, class counsel announced during Phase I their intention to seek punitive damages as to all counts, but never filed a motion to amend the complaint to seek these damages for any counts other than the intentional tort counts originally pled.  At the conclusion of Phase I, the jury found the defendants liable to the class members as a whole and also found that the class

- 13 -

members were entitled to punitive damages. After the jury found entitlement to punitive damages, class counsel asked for leave to amend the complaint to seek an award of punitive damages for all counts. The trial court ultimately denied the motion as untimely, so the Engle jury considered the amount of punitive damages based only on the counts for fraud, conspiracy to commit fraud, and intentional infliction of emotional distress.

The jury found that the class as a whole was entitled to $145 billion in punitive damages, to be divided by the class members. At this point, the defendants appealed.[4] The Third District reversed the judgment and decertified the class.

This Court approved in part and quashed in part the Third District's decision. Engle, 945 So. 2d at 1254. As to the issue of punitive damages, this Court held that the trial court prematurely allowed the jury to consider entitlement to, and amount of, punitive damages before the jury determined issues of causation and damages on the underlying claims. Id. at 1263. As this Court reasoned, "a finding of liability is required before entitlement to punitive damages can be determined, and that liability is more than a breach of duty. A finding of liability necessarily precedes a determination of damages, but does not compel a

_____

4. Because the defendants appealed after Phase II-B, the action did not proceed to Phase III.

- 14 -

compensatory award." Id. at 1262-63.[5] In other words, before damages can be imposed, the factfinder must determine individualized issues, such as legal causation and comparative fault—issues not yet determined in Phase I. Because problems with the three-phase trial plan negated the continued viability of the class action, this Court decertified the Engle class. Id. at 1267-69.

While decertifying the class, this Court indicated that the decertification was without prejudice for the class members to file individual claims within one year of the issuance of this Court's mandate, with res judicata effect given to the following specific Phase I findings:

> Questions 1 (general causation), 2 (addiction of cigarettes), 3 (strict liability), 4(a) (fraud by concealment), 5(a) (civil-conspiracy-concealment), 6 (breach of implied warranty), 7 (breach of express warranty), and 8 (negligence).

Id. at 1254-55. In other words, this Court explicitly held that the common liability findings from Phase I had res judicata effect for the Engle progeny plaintiffs but that none of the findings pertaining to punitive damages could stand.

The First District in Soffer and the Second District in Hallgren have each interpreted this Court's Engle decision, reaching different conclusions as to the effect of Engle on claims for punitive damages. We now hold that the Second

---

5. We also determined that the punitive damages award to the class based on the intentional tort theories was clearly excessive because it would practically bankrupt some of the defendants. Engle, 945 So. 2d at 1265 n.8.

- 15 -

District's interpretation of the effect of our <u>Engle</u> decision is the correct one.  As

the Second District reasoned:

> We recognize and appreciate the unprecedented significance of the <u>Engle</u> decision, and we agree that the <u>Engle</u> class is benefited by the res judicata effect of the Phase I findings.  Nonetheless, we cannot conclude that such benefit precludes an <u>Engle</u> progeny plaintiff from seeking a remedy barred as untimely by the <u>Engle</u> trial court for mere procedural deficiencies.  Further, unlike the First District, we conclude that the unique nature of <u>Engle</u> necessitates a finding that progeny plaintiffs are permitted to seek punitive damages on their claims for negligence and strict liability.
>
> First, as noted by the First District, the supreme court did not address this issue in <u>Engle</u>; rather, the supreme court made two holdings with regard to punitive damages, neither of which creates a bar to individual progeny plaintiffs seeking punitive damages for strict liability and negligence claims.  When the supreme court concluded that the punitive damages award must be reversed, it decided to decertify the class and retain the Phase I findings as to claims for negligence, strict liability, fraudulent concealment, and conspiracy to commit fraudulent concealment.  <u>Engle</u>, 945 So. 2d at 1269.  The court held that "[c]lass members can choose to initiate individual damages actions and the Phase I common core findings . . . will have res judicata effect in those trials."  <u>Id.</u>  By specifically stating that the Phase I common core findings would have res judicata effect without declaring the same for the procedural posture of the litigation, the court indicated that the rejected findings (and the issues not passed upon) would not have the same res judicata effect as is generally the case when litigation is declared res judicata.  Thus, while Mr. Hallgren and the Tobacco Companies are clearly bound by the findings the supreme court upheld, they are not similarly bound by the findings not passed upon.

<u>Hallgren</u>, 124 So. 3d at 354-55 (footnote omitted).  We agree with <u>Hallgren</u> and

accordingly conclude that the res judicata effect of the Phase I findings addressed

- 16 -

in Engle has no application to claims for punitive damages sought by Engle progeny plaintiffs.

Our decision in Engle specifically set forth those findings to which res judicata applies; nothing within our decision expanded the res judicata effect to the ability to pursue the remedy of punitive damages. Engle, 945 So. 2d at 1269 ("Class members can choose to initiate individual damages actions and the Phase I common core findings . . . will have res judicata effect in those trials."). In his concurring-in-part and dissenting-in-part opinion in Soffer, Judge Lewis aptly noted that R.J. Reynolds' argument—that res judicata precludes an Engle progeny plaintiff from seeking punitive damages on such claims—is actually an attempt to expand the res judicata effect of Engle beyond the parameters set by this Court. Soffer, 106 So. 3d at 462 (Lewis, J., concurring in part and dissenting in part).

There is simply no basis to conclude that the procedural posture of Engle would bar an Engle progeny plaintiff, such as Soffer, from amending her complaint to request punitive damages on all counts that were properly pled in her individual action. As the Second District explained:

> Practically speaking, however, a progeny plaintiff is still required to file a new complaint and go through the procedural morass of initiating a new cause of action. And a progeny plaintiff must still prove the "individual aspects of the claims specific to each plaintiff," including damages. [Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 432 (Fla. 2013).] Because the decision preventing the Engle class from amending its complaint to seek punitive damages for negligence was merely procedural and was not decided on the merits,

- 17 -

we conclude that the res judicata effect of the Phase I findings does not preclude progeny plaintiffs from seeking punitive damages on those claims. See id. at 433 (recognizing "that a 'purely technical,' non-merits judgment 'may not be used as a basis for the operation of the doctrine of res judicata' " (quoting Kent v. Sutker, 40 So. 2d 145, 147 (Fla. 1949))).

Hallgren, 124 So. 3d at 357. In other words, once the punitive damages award was vacated by this Court, any individual plaintiff was back to square one on the issue of punitive damages:

> But when the Engle trial court's judgment as to issues of punitive damages was reversed, the class members seeking punitive damages had to effectively start over in order to plead, prove, and collect punitive damages. If the supreme court had not opted to decertify the class and had instead remanded for a new trial, the class would have been free to renew its motion to amend the complaint to add the remedy of punitive damages to all of its substantive claims. See generally Fla. R. Civ. P. 1.190. Thus, we conclude that Mr. Hallgren was entitled to assert a claim for punitive damages on his claims for negligence and strict liability because, as the Soffer majority recognized, he was in the "same position [class members] would have been in had they filed a complaint identical to the Engle class-action complaint on the same date the original complaint was filed." Soffer, 106 So. 3d at 460.

Hallgren, 124 So. 3d at 357 (emphasis added).

As the Second District recognized, once this Court vacated all of the jury's findings pertaining to punitive damages and required members of the Engle class to file individual complaints, the slate was wiped clean as it pertained to punitive damages. Thus, we reject R.J. Reynolds' argument that res judicata and the

- 18 -

procedural posture of <u>Engle</u> prevent Soffer from seeking punitive damages on all properly pled causes of action.

## II. Waiver by Failure to Cross-Appeal

As an additional aspect of its preclusion argument, R.J. Reynolds points to <u>Airvac, Inc. v. Ranger Insurance Co.</u>, 330 So. 2d 467, 469 (Fla. 1976), for the proposition that a prevailing party must cross-appeal the denial of a motion to amend or else the party waives the right to reassert that motion following any remand. In other words, because the <u>Engle</u> class did not cross-appeal the denial of the motion to amend, R.J. Reynolds contends, the trial court's decision to disallow the amendment was fixed.

However, this argument by R.J. Reynolds is itself waived. When Soffer initially moved to amend her complaint, R.J. Reynolds did not argue that the trial court should deny the motion because the individual <u>Engle</u> progeny plaintiffs had waived the right to amend a complaint to seek punitive damages as to other counts. Now, R.J. Reynolds seeks to raise this new basis for why the trial court erred in permitting the amendment. Thus, R.J. Reynolds has waived this argument.

Although we conclude that this argument was waived, even if it were not, <u>Airvac</u> is distinguishable. Specifically, in <u>Airvac</u>, the Fourth District remanded the case on the initial appeal and directed three specific factual determinations: (1) whether Airvac had an insurable interest in a lost aircraft, (2) whether the

petitioner in that case held a valid lien, and (3) the amount of the lien. 330 So. 2d at 468. After remand, the defendant requested the trial court to permit it to add a new defense, which was intermingled with the liability questions. Id. at 469. However, the defendant had previously sought to amend the complaint to include this defense, and the trial court denied that request—a ruling that the defendant never challenged. While the decision in Airvac enunciated the law of the case doctrine in concluding that on remand the defendant could not amend its complaint to include the new defense, this Court later clarified that it decided Airvac on principles of waiver. See Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 107 (Fla. 2001) (recognizing the confusion that the Airvac holding caused). Because, as we have recognized in Juliano, Airvac improperly conflated the doctrines of waiver and law of the case, we now clarify that we recede from Airvac to the extent that it relies on the law of the case doctrine.

As to waiver, Airvac is distinguishable because waiver depends significantly on the posture of the case. Unlike Airvac, where the new defense was commingled with the issues of liability that were raised on appeal, the issue pertaining to punitive damages in this case was completely wiped clean. In fact, it makes no sense to apply the Airvac decision to this procedural scenario. The Engle trial court denied class counsels' motion to amend to include additional grounds for punitive damages based on timeliness because the motion was filed after the jury

found entitlement to punitive damages. However, the timeliness issue became moot when this Court decertified the class and vacated all findings pertaining to punitive damages.

Principles from cases vacating a trial court proceeding and ordering a new trial are analogous. As this Court held in Ed Ricke & Sons, Inc. v. Green, "[a]n order directing a new trial has the effect of vacating the proceeding and leaving the case as though no trial had been had." 609 So. 2d 504, 507 (Fla. 1992) (quoting Atl. Coastline R.R. v. Boone, 85 So. 2d 834, 839 (Fla. 1956)). Other district courts have likewise permitted a party to bring new claims where the case is remanded for a new trial. See Agate v. Clampitt, 80 So. 3d 450, 452 (Fla. 2d DCA 2012); Hethcoat v. Chevron Oil Co., 383 So. 2d 931, 933 (Fla. 1st DCA 1980). The principles of Ed Ricke—not Airvac—apply. We therefore reject this argument.

### III. Statute of Limitations & Equitable Tolling

We turn next to R.J. Reynolds' argument that the statute of limitations and principles of equitable tolling prohibit Soffer from seeking punitive damages under the negligence or strict liability theories. We reject this argument because a claim for punitive damages is not a separate, free-standing cause of action subject to a separate statute of limitations, but is rather a remedy that can be sought based on any properly pled cause of action.

In <u>Soffer</u>, the First District held that "principles of equitable tolling do not revive claims for punitive damages that were not timely presented." 106 So. 3d at 459. R.J. Reynolds argues that, if not for equitable tolling, Soffer's complaint would have been time-barred for over a decade, and equitable tolling does not permit a plaintiff to raise a demand for punitive damages unless this relief was previously pursued by the class.

The flaw in this argument is that it merges the distinct concepts of the timeliness of filing a complaint against a defendant based on an underlying course of conduct that results in harm to an individual, with the later ability to amend a pleading to add additional theories of recovery under the applicable rules of procedure. The statute of limitations is a separate and distinct concept from the ability of either party to amend their pleadings to add additional requests for relief. Statutes of limitations pertain to the time in which a cause of action can be brought against a defendant. As this Court has long recognized, the purpose of the statute of limitations is to protect parties from "defending claims which, because of their antiquity, would place the defendant at a grave disadvantage." <u>Major League Baseball v. Morsani</u>, 790 So. 2d 1071, 1075 (Fla. 2001) (quoting <u>Nardone v. Reynolds</u>, 333 So. 2d 25, 36 (Fla. 1976)).

In contrast, a claim for punitive damages is not subject to a separate statute of limitations, but is actually dependent on the underlying cause of action. A claim

for punitive damages focuses on ensuring the correct remedy for the underlying violation—one that punishes the defendant and deters others from engaging in similar conduct. As Judge Lewis of the First District aptly noted in his concurring-in-part and dissenting-in-part opinion:

> Engle III does not impose a blanket requirement that Engle progeny plaintiffs must file identical claims to the original class. Rather, it suggests that in order to take advantage of the Phase I findings, progeny plaintiffs must file the same claims. Here, Mrs. Soffer was able to take advantage of the Phase I findings because she, in fact, filed the same claims as the original class (strict liability, negligence, fraud, and conspiracy to commit fraud). The only difference is the remedy. The fact that her remedy of punitive damages was more extensive than that sought by the Engle class is not necessarily fatal. First, a claim for punitive damages is "not a separate and distinct cause of action but is auxiliary to, and dependent upon, the existence of an underlying claim." See Liggett Grp. Inc. v. Engle, 853 So. 2d 434, 456 (Fla. 3d DCA 2003) ("Engle II"), quashed in part by Engle III, 945 So. 2d at 1254; see also Country Club of Miami Corp. v. McDaniel, 310 So. 2d 436, 437 (Fla. 3d DCA 1975). Second, her reliance on the Phase I findings was not relevant to her claim for punitive damages, which she had to independently prove. See, e.g., [R.J. Reynolds Tobacco Co. v. Brown, 70 So. 3d 707, 717-18 (Fla. 4th DCA 2011)] (clarifying that the plaintiff must prove legal causation and damages). Third, the supreme court retained most of the jury's Phase I findings, except that it did not retain the finding on entitlement to punitive damages, which it found to be premature. See Engle III, 945 So. 2d at 1269.

Soffer, 106 So. 3d at 463 (Lewis, J., concurring in part and dissenting in part) (emphasis added).

In fact, although the Florida Rules of Civil Procedure govern most of the principles regarding amendments to pleadings, the Legislature has separately

addressed the right to recover punitive damages—not through the enactment of a separate statute of limitation, but through a separate statutory scheme in section 768.72. Section 768.72(1), titled "Pleading in civil actions; claim for punitive damages," states in pertinent part:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Section 768.72(1) reveals a clear legislative intent for defendants to be free from claims for punitive damages until an evidentiary basis exists. Thus, it is crystal clear that the Legislature intended for plaintiffs to conduct discovery <u>prior</u> to seeking punitive damages, and to thereafter allow a claim for punitive damages as provided by the Florida Rules of Civil Procedure.

Florida Rule of Civil Procedure 1.190(f) allows a complaint to be amended to add a claim for punitive damages only if there is a "reasonable showing, by evidence in the record, or evidence to be proffered by the claimant, that provides a reasonable basis for the recovery of such damages," thereby mirroring the statutory mandate. Further, rule 1.190(c) provides for relation back of amendments to

- 24 -

pleadings if the amended claim arises out of the same "conduct, transaction or occurrence" set forth in the original pleading.

Thus, so long as the cause of action is timely filed, a claimant may conduct discovery to determine whether sufficient evidence exists to seek punitive damages and then request to amend the complaint at a later date. Because a claim for punitive damages cannot be filed until after a cause of action is filed, and because it must be based on an existing cause of action and is not a separate cause of action, a claim for punitive damages is not subject to a separate statute of limitations. Thus, we reject the assertion that the statute of limitations and principles of equitable tolling prohibit a plaintiff from seeking punitive damages when the underlying action was timely filed.

## IV. Prejudice & Application of Law to This Case

Having concluded that res judicata, waiver, or the relevant statute of limitations do not prevent the plaintiff from seeking to amend the complaint to include a demand for punitive damages, we examine how these principles apply to this case and whether R.J. Reynolds would be prejudiced by allowing Soffer to seek punitive damages for these additional counts. Here, Soffer did not delay in bringing her cause of action. Consistent with this Court's direction in Engle, Soffer brought her own individual complaint, raising four causes of action that were all approved in Engle. After conducting discovery, Soffer sought to amend

- 25 -

her complaint, pursuant to section 768.72(1), to request punitive damages for those timely raised causes of action. The only difference between the causes of action in Engle and Soffer is that, in Soffer, a request for punitive damages was made for all of the counts pled.

The procedural posture in Soffer's individual case was completely different at the time that Soffer sought to amend her complaint to request punitive damages than that in Engle. In Engle, class counsel sought to amend the complaint to include a request for punitive damages on the non-intentional tort claims after the jury already found liability on the causes of action. Here, however, Soffer sought to amend her complaint to request punitive damages over a year prior to trial, and the trial court granted leave. In fact, while R.J. Reynolds objected to the amendment, R.J. Reynolds did not contend that Soffer was barred from requesting punitive damages on the negligence and strict liability counts until the eve of trial.

We reject R.J. Reynolds' argument of prejudice for many reasons. First, in the Engle case itself, entitlement to punitive damages was determined at the same time that the liability was decided, and there is no indication that the jury verdict on entitlement differentiated based on the underlying cause of action. As the Second District stated:

> [W]e find no surprise or prejudice to the Tobacco Companies in allowing Engle progeny plaintiffs to seek punitive damages for negligence and strict liability claims. From the inception, it was no secret that the Engle class members were seeking punitive damages as

- 26 -

a remedy on all of their substantive claims. The Tobacco Companies had sufficient notice and ample time to prepare their defense to those remedies. In Engle, however, the trial court precluded the class from seeking punitive damages on the non-intentional tort claims merely through a procedural defect—timeliness. Unlike Engle, in this case there was no suggestion that Mr. Hallgren's claim seeking punitive damages on all claims was untimely, nor any suggestion that the Tobacco Companies experienced any prejudice. Accordingly, the Tobacco Companies should not benefit from an unjustifiable expansion of the res judicata effect of Engle, which applies only to the substantive claims, to exclude a proper and timely pleaded remedy sought under those claims.

Hallgren, 124 So. 3d at 357-58.

Like the plaintiff in Hallgren, when Soffer sought to amend her complaint to seek punitive damages as to all counts pled, R.J. Reynolds did not assert either surprise or prejudice. After its initial objection to punitive damages was unsuccessful, R.J. Reynolds changed tactics and, after the trial was underway and the parties were discussing the appropriate jury instructions, argued for the first time that punitive damages for strict liability and negligence should not be permitted based on the procedural posture of Engle. Once again, no assertion of surprise or prejudice was made. Now, R.J. Reynolds asserts that it was surprised and prejudiced when the trial court permitted the plaintiffs to amend the complaint and allow punitive damages on all claims, instead of a portion of the claims. However, R.J. Reynolds fails to show how the differentiation as to the underlying legal theory would affect this.

The legal standard for establishing entitlement to punitive damages does not vary depending on the underlying legal theory. The standard jury instructions on punitive damages mirror the statutory directive as to proof of punitive damages as set forth in section 768.72(2):

> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

Therefore, the defendant cannot be liable for punitive damages simply on the basis of a jury finding that the defendant was strictly liable or negligent. Absent a finding of intentional misconduct, the defendant can be liable for punitive damages only if there is a finding by clear and convincing evidence of gross negligence—the same standard that applies regardless of the underlying cause of action.

Accordingly, there is no prejudice. Thus, the trial court did not err when allowing Soffer to amend her complaint to add punitive damages for negligence and strict liability but did err in disallowing the jury from considering punitive damages on those counts.

## V. The Proper Remedy

Finally, we address whether the proper remedy should be a new trial on all issues or a new trial focused solely on punitive damages. Although there is no claim of error in this case pertaining to the liability portion of the trial, where the jury found liability based on negligence and strict liability, R.J. Reynolds insists that a new trial is warranted because the respective determinations of liability and punitive damages are necessarily intertwined.

We disagree. In fact, in Engle, although we vacated the punitive damages award, we upheld the compensatory damages awards as they pertained to class representatives Mary Farnan and Angie Della Vecchia and did not require a new trial on both compensatory and punitive damages. Engle, 945 So. 2d at 1255-56. Consistent with decisions of other appellate courts, we conclude that where a trial court errs in striking a plaintiff's request for punitive damages before the jury considered the issue, the proper remedy is to reverse and remand for a new trial limited solely to the issue of punitive damages. See, e.g., Belle Glade Chevrolet-Cadillac Buick Pontiac Oldsmobile, Inc. v. Figgie, 54 So. 3d 991, 998 (Fla. 4th DCA 2010) (holding that the trial court abused its discretion in instructing the jury on punitive damages, reversing the punitive damages award, and remanding for a new trial on punitive damages alone); Estate of Canavan v. Nat'l Healthcare Corp., 889 So. 2d 825, 827 (Fla. 2d DCA 2004) (holding that the trial court erred in

- 29 -

excluding certain evidence during the punitive damages portion of the trial and remanding for a new trial on the amount of punitive damages only); Stephens v. Rohde, 478 So. 2d 862, 863 (Fla. 1st DCA 1985) (rejecting explicitly the defendant's argument that if the punitive damages demand was reinstated, any new trial should be on both compensatory damages and punitive damages because the two are so intertwined as to require a new trial on both, and remanding for a new trial limited to the issue of whether punitive damages should be imposed and, if so, the amount thereof).

Accordingly, because the trial court erred by preventing the jury from considering Soffer's request for punitive damages on all four counts, we remand for a new trial limited to the issue of whether punitive damages should be imposed for the negligence and strict liability claims and, if so, the amount thereof. We emphasize that Soffer still must satisfy the statutory requirements to demonstrate entitlement to punitive damages under these theories, including that the trier of fact must find, based on clear and convincing evidence, that R.J. Reynolds was "personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. This requires a determination that R.J. Reynolds either (1) had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the decedent would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage; or (2) engaged in

conduct that was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.  Id.

**CONCLUSION**

Writing for the Second District in Hallgren, Judge Sleet summarized the conclusion we adopt today:

> Under these circumstances, [the plaintiff] should not be limited to the pretrial procedural order on the Engle class's proposed amendment.  Once the class's punitive damage award was reversed, and each class member was required to seek punitive damages anew, progeny plaintiffs were free to assert any remedies available under the law.  Tacking on the remedy of punitive damages to the negligence and strict liability claims does not materially alter the substantive claims, and it does not materially differ from the punitive damages sought by the Engle class on the intentional tort claims.  Considered in light of the supreme court's decision to allow Engle progeny plaintiffs to "initiate individual damages actions," one simply cannot infer that the supreme court intended to place a limitation upon progeny plaintiffs' ability to pursue punitive damages as a remedy.  The Engle Phase I findings simply closed the door on any new or additional substantive claims and permitted each plaintiff to independently prove his or her respective damages, including punitive damages, at separate trials.

Hallgren, 124 So. 3d at 358.

For the reasons explained in this opinion, we answer the certified question in the affirmative, quash the First District's decision in Soffer, and approve the

Second District's opinion in <u>Hallgren</u> as to the issue of punitive damages.[6] Based on our reasoning here, we further disapprove the Third District's decision in <u>Williams</u>, 39 Fla. L. Weekly at D1863, and the Fourth District's resolution of the punitive damages issue in <u>Ciccone</u>, 123 So. 3d at 616-17 (Fla. 4th DCA 2013),

We remand this case to the First District for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
CANADY, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D11-3724

(Alachua County)

---

6. The Second District's decision in <u>Hallgren</u> also addresses whether the claims were barred by the statute of repose, an issue that we recently addressed in <u>Hess v. Philip Morris USA, Inc.</u>, 175 So. 3d 687, 689 (Fla. 2015), and <u>Philip Morris USA, Inc. v. Russo</u>, 175 So. 3d 681, 685 (Fla. 2015). In <u>Hess</u>, this Court held that while the critical date of the statute of repose relating to conspiracy claims should be the date of the last act done in furtherance of the conspiracy, evidence of reliance need not be established within the fraud statute of repose period. 175 So. 3d at 698-99.

John Stewart Mills and Courtney Rebecca Brewer of The Mills Firm, P.A., Tallahassee, Florida; Rodney Warren Smith, Mark Alexander Avera, and Dawn Marie Vallejos-Nichols of Avera & Smith, LLP, Gainesville, Florida; and James William Gustafson, Jr. of Searcy Denney Scarola Barnhart & Shipley, P.A., Tallahassee, Florida,

for Petitioner

Gregory George Katsas of Jones Day, Washington, District of Columbia; Robert Bruce Parrish and Charles M. Trippe, Jr. of Moseley, Prichard, Parrish, Knight & Jones, Jacksonville, Florida,

for Respondent